IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| German Felipe Reyes-Reyes,<br><br>    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | CIV 14-00005 PHX DGC (MEA)<br><br>REPORT AND RECOMMENDATION |

**TO THE HONORABLE DAVID G. CAMPBELL:**

Petitioner, proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on or about January 2, 2014. Respondents filed an Answer to First Amended Petition for Writ of Habeas Corpus ("Answer") (Doc. 11) on May 1, 2014. Petitioner docketed a reply (Doc. 12) to the answer to his petition on May 16, 2014.

**I Procedural History**

An indictment filed in Maricopa County Superior Court on February 6, 2012, charged Petitioner with one count of possession or use of dangerous drugs, a class 4 felony (Count 1), and three counts of misconduct involving weapons, alleged as class 4 felonies (Counts 2, 3, 4). See Answer, Exh. B. The state subsequently filed allegations of prior convictions and allegations of aggravating circumstances other than prior

convictions, asserting that Petitioner committed the charged offenses while on felony release. Id., Exhs. C, D, E. Prior to trial, Counts 3 and 4 were dismissed without prejudice. Id., Exh. F at 4.

The testimony at Petitioner's trial is summarized by Respondents as follows:

> On the evening of January 13, 2012, Phoenix Police Officers David Walker and Ann Hughes, who were working in an off-duty capacity although in uniform, providing security for an apartment complex located at 1717 West Glendale in Phoenix. At about 8:00 p.m., as they were driving through the complex, the officers saw a black 1994 Mercedes parked "in one of the parking coves on the east side of the apartment complex." A registration check on the Mercedes revealed that it was registered to Amy Marie Siegel at 411 West Lincoln Avenue in Phoenix. Officers Walker and Hughes approached the Mercedes on foot, saw that the sole occupant of the vehicle, Petitioner, was talking on a cell phone, and engaged him in a consensual encounter. Petitioner said he was "waiting for a friend." Upon learning that there was an outstanding misdemeanor warrant out for Petitioner's arrest, Officer Walker placed him under arrest and handcuffed him. Pursuant to the arrest, Officer Walker searched Petitioner. In Petitioner's right front pants pocket, Officer Walker found a baggie of methamphetamine (meth). In Petitioner's "corner" (watch) pocket, Officer Walker found a second baggie of meth. Before beginning a search of the Mercedes, while standing outside the driver's door, Officer Walker saw a "black handgun" on top of a black canvas bag underneath the folding armrest of the center console; though the canvas bag itself was not visible from outside the vehicle, the gun was sticking out 1 to 2 inches. The gun was loaded. Officer Walker found another baggie of meth inside the black canvas bag, as well as an empty baggie.

Id. at 3-4.

Prior to his trial, Petitioner filed a pretrial motion to suppress all evidence collected following his allegedly "illegal seizure" by law enforcement officers, claiming that the officers lacked either reasonable suspicion or probable cause to "contact him." Id., Exh. I at 1 & 5. At an evidentiary hearing conducted by the state trial court regarding the motion to suppress, Petitioner and Officers Walker and Hughes testified. Petitioner testified that, after being contacted in his car and telling the police officer that he did not have a driver's license,

> Officer Walker then asked for his "name and Social Security number," and that he provided that information to them. Petitioner said that he was then told he was under arrest for an outstanding warrant. Petitioner testified that he told the officer that he was "on probation," had just come from his "probation officer" who had not arrested him, and that it was "impossible" that he had an outstanding warrant. Petitioner said that the warrant was "from 2007 in Yuma," and the officers showed it to him on their computer screen. Petitioner said his interaction with the officers felt like "an interview" and he did not feel "free to leave."
> Petitioner claimed that the officers' patrol car was parked "[r]ight behind" the Mercedes [he was driving], and Officer Hughes "was right in the back" behind the Mercedes, so he could not back up, and that there was a "sidewalk" in front of him.
> Petitioner acknowledged that the officers never activated their red and blue flashing lights, did not tell him to stay or that he was not free to leave, and that he never told the officers that he did not want to talk to them or wanted to leave.

Answer at 5-6.

Respondents summarize the arresting officer's testimony as follows:

> On January 13, 2012, at about 8:15 p.m., Officers Walker and Hughes saw a black Mercedes parked on the east side of the complex "taking up two parking spaces." Officer Hughes conducted a registration check on the Mercedes, and they continued their patrol through the apartment complex. About 10 to 15 minutes later, they saw the Mercedes "coming back through the complex" southbound, as the officers were approaching northbound. The Mercedes pulled into "the second parking cove just south of Glendale," then "parked directly in front of a known drug location." Officer Walker, who had worked security at the complex for about 3 months, arrested two to three people in a "normal night" for drug possession in the apartment complex. After the Mercedes parked in front of the drug house, Officers Walker and Hughes pulled into a parking lot just north of the cove and parked for "about five minutes" to see if the Mercedes "would come back out." Officer Walker did not activate the patrol car's overhead lights. He approached the driver's side of the Mercedes and greeted Petitioner by asking, "[H]ey, how are you doing?" Officer Walker asked Petitioner, "[D]o you have a driver's license?" Petitioner said he did not. Petitioner said he was "waiting for a friend that was in one of the apartments." Officer Hughes informed Officer Walker that Petitioner "had a warrant," so Officer Walker arrested Petitioner, and then searched him incident to arrest. Officer Walker testified that he did not tell Petitioner he had to stay or talk to him, that Petitioner could have driven away, and that the officers would not have pursued Petitioner had he driven off. Nevertheless, because Petitioner had been "parked directly in front of a known drug location" for 5 minutes, Officer Walker felt it was "suspicious." Based upon his "current job" in narcotics, Officer Walker believed they had "reasonable probable cause [reasonable suspicion] to stop the vehicle" and "talk to them."

Id. at 6-7.

The state trial court denied the motion to suppress, concluding that "[a] police officer does not need reasonable

-4-

1 suspicion or cause to approach a person and ask questions" and
2 Petitioner "was free to leave or not talk to the officers."
3 Id., Exh. F at 78.  Because the court found there was no Fourth
4 Amendment seizure, the trial court did not reach the issue of
5 whether there was sufficient reasonable suspicion to detain
6 Petitioner.

7      In a decision issued July 12, 2012, a jury convicted
8 Petitioner on Counts 1 and 2.  Id., Ex. G at 45 & 133-34.  The
9 trial court found that Petitioner had three historical prior
10 felony convictions and that he had committed the offenses while
11 on probation.  Id., Exh. H at 42.  Petitioner was sentenced to
12 presumptive, concurrent terms of ten years imprisonment on each
13 count of conviction.  Id., Exh. H at 46.

14      Petitioner took a timely direct appeal of his
15 convictions and sentences.  Id., Exh. K.  Petitioner asserted the
16 trial court abused its discretion when it denied his motion to
17 suppress the evidence based upon an alleged Fourth Amendment
18 violation when officers seized him and required him to identify
19 himself in order to conduct a warrant check.  Id., Exh. L.  In
20 a decision issued June 20, 2013, the Arizona Court of Appeals
21 rejected Petitioner's argument and affirmed his convictions and
22 sentences.  Id., Exh. N.  The appellate court held that the
23 trial court had not abused its discretion in denying
24 Petitioner's motion, and that the encounter between Petitioner
25 and the officers was consensual.  Id., Exh. N.  Petitioner
26 sought review of this decision by the Arizona Supreme Court,
27 which denied review on December 4, 2013.  Id., Exh. P.

On December 18, 2013, Petitioner initiated a state action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure. Petitioner was appointed counsel to represent him in that action. See Doc. 4, Exh. R. Respondents aver that proceeding is still pending.

On January 2, 2014, Petitioner filed the instant federal habeas action, asserting a violation of his Fourth Amendment rights. In the order directing Respondents to answer the habeas corpus petition, the Court noted Petitioner's pending petition for post-conviction relief and cautioned Petitioner that, "if he [chose] to proceed only on the claim in his current habeas corpus case, this Court likely will be unable to consider any claims in his pending Rule 32 proceeding unless Petitioner first obtains authorization from the Ninth Circuit Court of Appeals to file a second or successive habeas corpus case..." See id. at 2. Petitioner has not sought to withdraw or stay his habeas action.

Respondents allow that the petition is timely and that Petitioner's Fourth Amendment claim was exhausted in the state courts.

**II Analysis**

A federal District Court may not grant federal habeas relief on a Fourth Amendment claim in a section 2254 action. See, e.g., Stone v. Powell, 428 U.S. 465, 96 S. Ct. 3037 (1976); Villafuerte v. Stewart, 111 F.3d 616, 627 (9th Cir. 1997); Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990). A federal court may review Fourth Amendment claims in habeas

corpus proceedings only if the state court proceeding denied the petitioner an "opportunity for full and fair litigation of a Fourth Amendment claim." Stone, 428 U.S. at 482, 96 S. Ct. at 3051–53. See also Woolery v. Arave, 8 F.3d 1325, 1326-28 (9th Cir. 1993) ("We reverse the district court's decision granting [the petitioner] habeas relief without consideration of Stone v. Powell. We remand for further proceedings to afford [the petitioner] the opportunity to show that the state court did not offer him a full and fair opportunity to litigate his Fourth Amendment claim.").

Whether the state court correctly decided the claim, is irrelevant on habeas review. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996)("[t]he inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided.").

> In Stone v. Powell, 428 U.S. 465, 492–495, 96 S.Ct. 3037, 3051–3053 [] (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." 428 U.S. at 494, 96 S.Ct. at 3052 (internal citation omitted)[]. Stephens concedes he had a full and fair opportunity to litigate his claim in the state court. Thus, Stone barred the district court from considering on collateral review whether the state court erred in ruling that the search was lawful.

Stephens v. Attorney General of Calif., 23 F.3d 248, 249 (9th Cir. 1994). Petitioner bears the burden of establishing that

-7-

the state courts did not fully and fairly consider his Fourth Amendment claim.  See Woolery, 8 F.3d at 1328; Young v. Conway, 715 F.3d 79, 92 (2d Cir. 2013).

The record of the state proceedings in this case compels the conclusion that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim. See Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005).  Petitioner's counsel filed a motion to suppress in the trial court and the trial court held an evidentiary hearing on this issue.  The state trial court's ruling  and the Arizona Court of Appeals' decision in Petitioner's direct appeal indicate Petitioner's Fourth Amendment arguments were carefully considered by both the trial and the appellate court.

In his reply to the answer to his habeas petition, Petitioner asserts the state courts' conclusions that his Fourth Amendment rights were not violated were "unreasonable and claim did not receive full and fair consideration" and were contrary to published opinions of the United States Supreme Court. Petitioner contends the officers could not lawfully contact him regarding a "non-extraditable misdemeanor traffic warrant" and that after his initial contact with the officers he was not free to leave because once a police officer asks for identification an individual has been "stopped" and the stop is no longer consensual.  Petitioner contends that "no reasonable person" would feel free to ignore an officer's request to provide identification and "just walk off."  Doc. 12.

Other than disputing the legal holding reached by the Arizona courts, Petitioner does not identify a basis for claiming that the evidentiary hearing was not a full or fair opportunity to present his Fourth Amendment claims. Based on the record, Petitioner had a full and fair opportunity in the state court to litigate his claims, and took full advantage of the opportunity. Therefore, the Court should not consider the merits of and may not grant relief on Petitioner's Fourth Amendment claims.

### III Conclusion

Petitioner's claim of a Fourth Amendment violation was fully and fairly litigated in the state courts and, accordingly, consideration of the merits of the claim is barred by the doctrine of Stone v. Powell.

**IT IS THEREFORE RECOMMENDED that** Mr. Reyes Reyes' motion for federal habeas relief be **denied**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the

parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 20th day of May, 2014.

_____
Mark E. Aspey
United States Magistrate Judge